## BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF BERGEN v. STATE.

1. If the board of chosen freeholders wilfully refuse to build or repair a bridge over a highway where it is necessary, they are indictable for the neglect of duty.
2. The freeholders have no right to consider whether the road is necessary; the limit of their discretion is to determine whether a bridge is necessary, assuming the use of the road to be necessary. The right of the public to the convenience of travel is paramount, and the freeholders must exercise their discretion in such manner as to make the highway passable and safe. If a bridge is required to afford such use, the freeholders cannot, without dereliction of duty, refuse to provide the bridge.
3. Where a defendant is convicted for maintaining a nuisance which is continuous, the usual course is to order it to be abated, and if the defendant refuse to obey, to direct an abatement by the sheriff. But where the nuisance consists of a neglect to build or repair a bridge, a different rule applies.
4. So much of the judgment below as requires the sheriff to repair the bridge is erroneous, but it is separable from the rest and may be pronounced void, without reversing the entire judgment by force of Section 89 of the criminal procedure act. *Rev., p.* 284.

In error to the Bergen county Oyer.

The board of chosen freeholders of the county of Bergen were indicted at the December Term, 1878, of the Bergen county Oyer and Terminer, for not repairing a public bridge in a regularly laid public highway in said county. The indictment came on for trial before the Oyer and Terminer of said county, and a verdict of guilty as charged in the indictment

rendered.   The sentence of the court was : " That the defendants do pay a fine of ten dollars and costs of prosecution, and that defendants forthwith put said bridge in repair so as to be safe for public travel, and in default thereof, that the writ of the court be awarded to be hereafter issued upon the order of the court, directed to the sheriff of the county of Bergen, commanding him to put said bridge in repair so as to be safe for public travel, and that the defendants pay the expense thereof and the subsequent costs."

A writ of error was brought to this court.

Argued at February Term, 1880, before BEASLEY, CHIEF JUSTICE, and Justices VAN SYCKEL and DIXON.

For the plaintiffs in error, *Ackerson & Van Valen.*

I. The bridge in question was out of repair and dangerous, and the board of chosen freeholders, it is to be assumed on this hearing, intentionally failed to repair it, not for any corrupt purpose, but in the exercise of what the board regarded as statutory discretion.

The substance of the charge was that where there is a public bridge in a regularly laid public highway, it is the duty of the board to repair the bridge if the bridge itself is in need of repair, without reference to the question of the expensiveness of the repairs, or the public utility or necessity of the bridge, or the condition as to the repairs of the highway upon which the bridge is located.   Further in substance that the fact that a public bridge is actually in need of repair requires the board of freeholders to repair it, and that for the intentional refusal thereof an indictment will lie.

The chief question involved arises on the motion to quash the indictment, and in the refusal to charge that the defendants cannot be convicted for neglecting to repair the bridge, because by the laws of this state, the defendants have a discretion whether to repair or not.   It is unnecessary to refer more particularly to the charge and the various exceptions, for the point is squarely presented by us that the board of

chosen freeholders, under the statute, has a discretion to repair the bridge or not, as in its judgment public utility and necessity may require.

This is chiefly a question of statutory construction of Sections 1 and 2 of the act respecting bridges. *Rev., p.* 84, &c. The language of Section 1 as to the powers of the board is as follows : " For the purpose of their considering and deciding upon the utility and necessity of erecting, rebuilding or repairing the said bridge." The first section applies to the full board. Section 2 has reference to the action of three freeholders, and their power is given in these words, " are hereby authorized to order, *if they think proper*, the said bridge to be built, rebuilt or repaired."

The language of each of these sections seems to me to be broadly discretionary. When the freeholders act as individual officials, the words " *if they think proper*," are very discretionary ; and when the board acts, the words " *considering* and *deciding*," are common significant words to confer discretionary powers, or powers of the nature of judicial. No stronger terms could be used to invest a special tribunal with powers even of a judicial nature than these.

The scope also of the exercise of the power depends upon utility and necessity.

The words also involve discretion.

It was held by this court in *State* v. *Inhabitants of Hudson County,* 1 *Vroom* 137, that the inhabitants of counties in this state are not indictable for not repairing bridges ; but whether the board of freeholders was, was undecided, the court stating " we only wish not to be considered as acquiescing in the *dicta* in the books that the board of chosen freeholders may be indicted."

The board of chosen freeholders is a public corporation composed of the various freeholders elected from the townships. The inhabitants are not incorporated. The board is composed of representative men, who are presumed to act for the public welfare. It is reasonable that the power to expend the people's money for bridges should be limited somewhere, and no more fitting body could be selected than the board composed as it is.

The clear intention, I think, of the bridge act was to leave with the board, as the proper tribunal, the determination of the question of the erection, rebuilding or repairing of bridges.

The cases in this state bearing on this question of discretion are the following : *State* v. *Freeholders of Essex*, 3 *Zab.* 214 ; *Freeholders* v. *Strader*, 3 *Harr.* 108; *Allen* v. *Freeholders of Monmouth*, 2 *Beas.* 68 ; *State* v. *Freeholders of Hudson*, 1 *Vroom* 137 ; *McKinley* v. *Freeholders of Union*, 2 *Stew.* 164.

This is a very important question for the public, for it is well known that within the last fifteen years, under the guise of improvement, roads and bridges have been constructed without a due regard to public necessity, and taxpayers have been subjected to large expenses, which could as well have been avoided, and if this conviction is right, the board of free-holders are powerless in any way to correct the difficulty.

It must also be borne in mind that this indictment is not against the individual members of the board for corruption or malfeasance in office, but is against the board, and entirely without precedent. ·

The anomalous result of conviction would also indicate that the legislature could not have intended an indictment against the board as such, for the board could only be punished by fine, which fine goes at once to the county. The imposition of a fine is a useless ceremony. There may be some sense in dealing with members of the board for malfeasance in office, but apparently no reason why the board should be indicted.

The practical result of an indictment, when the question of discretion of the particular work is left to a petit jury as a fact, is not advantageous to the public, because the power is better lodged with the representatives of the different townships in the board, who, in the light of all the county interests, are competent to decide.

This question evidently was a difficult one to the mind of the court, and was willingly put in shape for review.

II. The sentence or judgment in ordering the sheriff of the county to repair the bridge, and that the board pay the costs

thereof, is without authority of law; that duty, if it exists, must be performed by the board itself, in which is lodged the taxing power and the incurring of the necessary expense.

The judgment of the board as to the manner and cost of the work cannot be supplanted by the sheriff; this is not a case of *abatement* of nuisance, but of expenditure of money in a work within the province of the board, and any failure of the board to do its duty, does not oust it of jurisdiction to perform it when such duty is ascertained.

A *mandamus* may be a proper remedy to compel the board to do its duty, but I know of no common law power in the Oyer to direct this work to be done by the sheriff. The very difficulty about this, in connection with the uselessness of a fine, is also a strong argument against the validity of this indictment and conviction.

III. Any question in regard to the obstruction of the highway by the board is of no account, as it is admitted that the bridge was dangerous, and the bar was placed across it for the public safety. Any discussion of that matter, and the liability of the board for an indictment therefor, is of no practical use or relevancy.

For the defendants, *W. S. Banta* and *W. M. Johnson.*

This indictment is for a public nuisance.

The public nuisance charged is that a public bridge in a public highway is ruinous, dangerous, and in great decay for want of repair. Such want of repair is a nuisance and indictable.

There is no dispute that the bridge named in the indictment is a public bridge in a public highway, and that the bridge is ruinous, dangerous, and in great decay for want of repair.

The indictment charges that the board of chosen freeholders of the county of Bergen is bound to repair the bridge when necessary, that the board had notice that the bridge was dangerous, and that it wilfully and unlawfully neglected to repair the same.

It is not disputed that the board had notice of the want of repair, and that it refused to repair.

The only important remaining question is, Is the board bound to repair this bridge? Is it the duty of the board to repair, and is it indictable for not doing so? If the maintaining an unsafe bridge is a nuisance, works harm and damage to the public safety or convenience, and is a crime in law, somebody is responsible for such crime. That responsible somebody is the person or corporation upon whom the law imposes the public duty to make safe a dangerous bridge, and who neglects to perform such public duty.

It is a principle of law which needs no reference to authority, that when any duty to the public is imposed either by the common or statute law, the party so charged is indictable for neglect.

We maintain the board of freeholders is the only party charged with the duty to repair bridges, and therefore properly indictable if it neglects to do so.

Because of their ownership. The board builds all bridges, involving certain amounts of expenditure, and therefore owns them. The proof in this case is that the board bought and paid for the land on which the bridge was built, contracted for the building of the bridge, and paid for it when completed. If the board owns the bridge, its duty is to repair it.

Because the bridge is built for certain purposes. Such purposes are that all the good citizens of the state may pass and travel over the bridge. The board do not build bridges for ornaments or as works of art, but for public use and convenience. Bridges built for public use must be kept in repair to meet such use.

Because the statutes impose this duty on the board. *Directly* by Section 4 of the act concerning chosen freeholders, by which it is enacted, " that it shall be the duty of every such corporation, &c., to vote, grant and raise such sum or sums of money for the building, purchasing or repairing of poor-houses, jails, court-houses and bridges, &c., all which money so raised shall

be applied, paid and expended under the direction and management of the said corporation."

*Indirectly* by Section 9 of the act concerning bridges, by making the township or board of chosen freeholders, when chargeable by law with the repair of any bridge, and when they neglect to repair, liable for damage for injury sustained for such neglect to repair. The county of Bergen is not exempt from the operation of this act.

By the common law the duty of repairing bridges was imposed upon the inhabitants of the county, and if the inhabitants of the county neglected to repair they were indictable. By the laws of New Jersey this duty has been imposed upon the board of freeholders of the county. The board stands in precisely the same relation to the public as the inhabitants of the county did regarding their liability to repair bridges. If the inhabitants of the county were indictable, the board occupying their position as to a public duty, is also indictable for like neglect of such duty.

The defendant contends that under Sections 1 and 2 of the act respecting bridges, it has a discretion whether to repair or not; that it may build or repair if it think proper; that is, do as it pleases.

We hold the repairing of bridges is a duty imposed by law on the board of freeholders of the county. A duty is that which a person or corporation is bound by legal obligation to pay, do or perform. A duty is only discharged when the obligation is paid or performed. We are not at liberty to do as we please with a duty. If so, we have this monstrous absurdity in law: A dangerous bridge is a nuisance, and if the board may do as it pleases about it, and it pleases to keep it dangerous, then it may maintain a nuisance with impunity and defy all law and justice.

When a duty is imposed and the law requires its performance, discretion points out the most prudent and wisest course, and selects the best means for its accomplishment. It ceases to be discretion if exercised imprudently, wrongfully and · without reason. It may be exercised illegally, and perhaps

criminally. Who would defend the action of a board of free-holders in building a structure like the Rialto over the Morris canal in the Hackensack meadows?

Full effect can be given to the language of the act said to confer discretionary powers by holding that the board is to consider and decide whether repairs are in fact necessary, and if necessary, how to be made. When discretion decides that repairs are necessary, there is an end to discussion and the duty to repair is imperative.

This discretionary power claimed by the defendant would give the right to tear down, burn up or abandon every bridge in the county, and thus practically destroy and vacate a high-way of which a bridge forms a part. After a public bridge has been accepted and used by the public, no board has any power to destroy or abandon it.

It is said an indictment against a board of freeholders is without precedent, and if any indictment will lie it must be against the individual members of the board. We hold an in-dictment will lie against both. There can be no reason or argument urged why the board as a corporation should be ex-empt from the general principle before stated. If the board in its corporate capacity neglect to perform a public duty, in its corporate capacity it should be criminally held.

It is unnecessary to discuss the liability of the individual members of the board to indictment.

It is urged that the judgment of the court is without au-thority of law. Upon conviction for nuisance the judgment of the court is imprisonment or fine or both, and that the nuisance be abated. The abatement of a nuisance must con-form to the nature of each case. Should an indictment charge a slaughter-house as a nuisance, and conviction follow, the judgment of abatement would mean the removing or pulling down such nuisance. Should an indictment charge a danger-ous bridge as a nuisance, here on conviction the abatement of the nuisance will be removing the danger by proper repairs. To require a convicted defendant to execute the judgment of the court before which it was convicted would be an absurdity.

The judgment of a court in such case is entrusted to the sheriff, who is the proper officer of the court and legally authorized to execute its judgments.  If the judgment should not be in proper form, this court in its reviewing the case will have full power to modify and correct it, so as to aid the perfect administration of justice and not overthrow or subvert it.

The opinion of the court was delivered by

VAN SYCKEL, J.   The trial below resulted in a conviction of the board of chosen freeholders of the county of Bergen for not repairing a county bridge.

The court instructed the jury that if the defendants, knowing it to be their duty to make the repairs, wrongfully refused to perform it, they were guilty of wilful neglect, for which they should be convicted.  The only question made in the case is whether an indictment will lie against the board of freeholders for wilful neglect to repair a county bridge.

It is insisted that by virtue of Sections 1 and 2 of the act respecting bridges, the freeholders are not under a legal obligation to build and repair bridges where they are necessary, but that they have in all cases a discretion whether to build and repair or not.   The effect of such an interpretation of the law would be, that if they chose to act arbitrarily and render the highways impassable, the public would be remediless. There is nothing in the language of the statute to make that construction necessary, and it is too obviously against public policy to be adopted in the absence of some clear expression requiring it.   The subject of building and keeping bridges in repair is committed to the board of freeholders; they alone have the power to raise money adequate for the purpose, and the duty rests upon them of so exercising their functions that the public shall not be deprived of the use of their highways by reason of their refusal to act.   Whenever the building or reparation of a bridge becomes necessary for the use of the road, the duty falls on them to execute the work.

In this case the necessity for repairing has been found to exist, and the neglect was wilful.

The effect of the decision of the board was, not that the repairs of the bridge were not needed, but that the road was not necessary.

The limit of their discretion is to determine whether a bridge is necessary, assuming the use of the road to be necessary. The right of the public to the convenience of travel is paramount, and the freeholders must exercise their discretion in such manner as to make the highway passable and safe. If a bridge is required to afford such use, the freeholders cannot, without dereliction of duty, refuse to provide the bridge.

If the power of the board was enlarged to the magnitude claimed, it would virtually give them a veto power over the laying of roads. The question whether a public road is necessary, and whether it shall be laid out, has been committed by the law to another tribunal, and it was never intended that the easement should be rendered incapable of use by the inaction of the freeholders in withholding a bridge. To maintain the right to use an unlimited and arbitrary discretion, it must be held that they could refuse to build a bridge in the most populous district, where the stream presented at all times an impassable barrier to travel without it. This right would extend not only to roads newly laid out, but it would embrace the highways which had been safely traversed for years, and put it within the power of the board of freeholders to say whether public travel should be suspended by their refusal to furnish the necessary bridges. It may be said that it will not be presumed that the board will fail to exercise its discretion wisely, but in this case it has been found that they have wilfully refused to discharge their duty.

There is nothing in the case of *State* v. *Freeholders of Essex*, 3 *Zab.* 214, in conflict with this conclusion. There the freeholders erected a new bridge very nearly on the site of the old one, its northern abutment immediately joining the northern abutment of the old bridge, and its southern abutment being only twenty-two feet from the southern abutment of the old one. The court properly refused a *mandamus* to compel the rebuilding of a bridge on the exact site of the old

bridge, saying that the situation of the structure under the circumstances was to be settled by the judgment of the freeholders. But the court distinctly said "that where there is a clear and undeniable abuse of discretion, as where the freeholders should refuse to build a bridge which was absolutely and essentially necessary to the enjoyment of an ancient highway by the public, this court may exercise its power by enforcing that duty. Where the inferior jurisdiction has not been guilty of a clear and manifest abuse in the exercise of its discretion, a *mandamus* ought not to be granted."

The ground upon which this conviction must rest is here clearly stated. At common law the duty of repairing bridges was cast upon the inhabitants of the county, and they were indictable for neglect to repair.

By the laws of New Jersey the freeholders in this respect occupy the same relation to the public that the inhabitants of the county did under the English law. The bridge act imposes a duty on the freeholders to make the highways passable and safe; it does not leave it to their mere option whether they will provide a way for the public. A wilful failure to make the necessary provision is an abuse of their office. There is a right on the part of the public to the use of the easement, and a corresponding obligation on the freeholders to make the requisite appropriation to that end. Any other interpretation of the act would leave these officers wholly irresponsible save to their own consciences for the manner in which they discharged a duty so important in its consequences. If the public have a right to the use of their highways and to the bridges, without which they cannot be enjoyed, a duty rests upon the freeholders, and the public are not dependent upon their mere will or caprice. No precise rule can be formulated by which it shall be adjudged in every case, whether the refusal of the freeholders to grant a bridge is within the proper limit of their discretion; each case as it arises must be dealt with according to its peculiar circumstances. It can be safely declared that where the public would be deprived of the beneficial use of the highway without the bridge, a refusal to provide it would

constitute a breach of official duty; and on the other hand, where a road not much used crosses a stream of water which can be safely forded, the freeholders may in their discretion decline to interfere, without subjecting themselves to restraint from any other tribunal.

The conclusion that the statute imposed on the board of freeholders the duty to repair the bridge in this case, and the fact that they wilfully neglected that duty, makes the conviction lawful. It is a principle of the common law which has been adopted in this state, that where either the common or statute law imposes upon public ministerial officers a duty, they are indictable for its neglect.

In *Freeholders* v. *Strader*, 3 *Harr.* 108, the Supreme Court, in holding that no action would lie by an individual for injuries sustained by him for neglect of duty by the board, assumed that an indictment would lie. The fact that the fine, if imposed, would go to the county, is not a controlling circumstance.

The judgment on the indictment will settle the right, and lay the foundation for an application for *mandamus*.

So much of the judgment of the court below as requires the sheriff of the county to put the bridge in repair at the expense of the defendants ought not to stand. Where a defendant is convicted for maintaining a nuisance which is continuous, the usual course is to order it to be abated, and if the defendant neglect or refuse to obey, to direct an abatement by the sheriff. 2 *Whart. Crim. Law*, § 2377; *Barclay* v. *Commonwealth*, 1 *Casey* 503.

But where the nuisance consists of a neglect to build or repair a bridge on a highway a different rule must apply. Such a work would involve the expenditure of a large sum of money, and the exercise of a discretion as to the manner in which it should be done.

The exercise of such discretion has been committed by the statute not to the sheriff, but to the freeholders alone, and they should be compelled to discharge that duty.

No mode being provided by law in which the sheriff may

be supplied with the funds necessary for this purpose, the risk of obtaining repayment ought not to be borne by him.

This clause of the judgment is separable from the rest, and may be pronounced void, without reversing the entire judgment, by force of Section 89 of the criminal procedure act. *Rev., p.* 284.